ORIGINAL

FILED
OCT 23 2008
U.S. COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| JAMES COULTER, | § | |
| | § | |
| V. | § | NO. 08-669-C |
| | § | |
| | § | Chief Judge Edward J. Damich |
| THE UNITED STATES | § | |

## PLAINTIFF'S AMENDED COMPLAINT

**TO THE HONORABLE JUDGE EDWARD J. DAMICH, CHIEF JUDGE:**

**COMES NOW**, James Coulter, Plaintiff, complaining of Defendant, The United States, and for cause of action would show:

### I.
### Parties, Jurisdiction & Venue

1. At the time the Original Complaint was filed, Plaintiff James W. Coulter was an individual who formerly resided in Richardson, Dallas County, Texas. James Coulter died intestate on May 18, 2007. His daughter, Lisa Coulter, has made application to act as James Coulter's personal representative in this matter.

2. Defendant The United States is the substituted Defendant on transfer of this matter from the U.S. District Court for the Northern District of Texas, Dallas Division, where the Original Complaint was filed as Civil Action No. 06-CV-01497. James Coulter, at all relevant times herein, was employed by the United States Postal Service ("Agency"). Agency was served with process and appeared herein.

3. The 5th Circuit case of *Patterson v. Spellings*, 249 Fed. Appx. 993, 2007 U.S. App. LEXIS 23788, 2007 WL 2948663 (5th Cir. 2007), stands for the proposition that the U.S. Court of Federal Claims has exclusive jurisdiction under the Tucker Act over a

PLAINTIFF'S AMENDED COMPLAINT PAGE 1

claim for breach of contract between a federal employee and his employer if the monetary amount exceeds $10,000.00, which it does in this matter.

4. Jurisdiction properly lies with the U.S. Court of Federal Claims under 28 U.S.C. §1346(a) and the decision in *Patterson*.

## II.
## Factual Background to Complaint

5. Plaintiff Coulter was employed as a PS-4 Modified Mail Handler at the Dallas USPS facility.

6. Plaintiff Coulter suffered from Bi-Polar Disorder, which causes him to have anxiety attacks, high blood pressure, severe headaches, chronic mood swings, and despondency. Plaintiff Coulter was treated with medication to suppress the symptoms of this disorder. At times, Plaintiff Coulter would be required to take periods off work to treat this disorder.

7. Following a hospitalization, Plaintiff Coulter received a medical release to work on February 1, 1999.

8. Plaintiff's First Level Supervisor, Roy Andy, had engaged in a pattern of harassment against Plaintiff Coulter following an incident in October, 1997, where Plaintiff Coulter questioned his use of a forklift to move bulk mail in violation of the union contract.

9. Plaintiff's Second Level Supervisor, James Jones, and his boss, Bob Diehl, MDO, refused to allow Plaintiff Coulter to work after his release to return to work following his hospitalization, and instead issued a letter scheduling him for vocational rehabilitation due to absenteeism.

10. Believing he was a victim of discrimination and retaliation, Plaintiff Coulter filed an EEO complaint alleging that the Agency discriminated against him in violation of Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, on the basis of disability (Bi-Polar Disorder) and reprisal for prior EEO activity. Plaintiff Coulter sought reinstatement to the Agency as a corrective action for the discrimination. Coulter's EEO complaint was given Case No. 1G-756-0057-99.

11. The Agency accepted Coulter's claim as alleging discrimination when it issued him a letter dated February 10, 1999, scheduling him for vocational rehabilitation.

12. On March 24, 1999, the parties reached a mediated settlement agreement settling six of Coulter's pending EEO complaints, including Case No. 1G-756-0057-99. The settlement agreement provided that the Agency would do whatever possible to have Coulter reinstated as an employee at the Agency's Dallas facility.

13. Coulter sought vocational rehabilitation. In a letter dated April 5, 1999, his counselor stated she was informed by OWCP that the Agency would not allow Coulter to return to his position, although it was her belief that he could successfully return to work there.

13. In late April, 1999, the Agency denied Coulter's effort to return to work.

14. In August, 1999, Coulter filed a formal complaint in Case No. 1G-756-0057-99, alleging he was subjected to discrimination on the basis of disability by the letter of February 10, 1999, directing him to vocational rehabilitation due to absenteeism, and complaining that he was absent because the Agency would not allow him to return to work after his hospitalization.

15. The Agency accepted the complaint for investigation, and complainant requested a hearing before an Administrative Judge (AJ) at the conclusion of the Agency investigation.

16. Following the issuance of Show Cause Order, the Administrative Judge dismissed the complaint for failure to state a claim, finding Coulter had not suffered any adverse action. The Agency fully implemented the decision.

17. On appeal, the Commission concluded the Coulter's complaint stated a claim, and reversed the Agency's decision, remanding the complaint to the Agency for further processing. *Coulter v. United States Postal Service*, EEOC Appeal No. 01A32557 (Aug. 30, 2004).

18. On remand, a new Administrative Judge issued a Notice of Intent to Dismiss Hearing Request on the basis that the issues before her had been settled by the March 24, 1999 settlement agreement. In his response in opposition, Coulter stated:

> "At the March 24, 1999 Settlement Agreement redress hearing the following statement in the agreement is as follows "it is agreed that Olan Mathis will do whatever possible to have James Coulter reinstated to employment at the USPS BMC facility 2400 DFW Turnpike Dallas, Tx." *** Everyone, including Mr. Mathis, believed that I would be reinstated at the BMC, especially since the personnel with the agreement power to bind this agreement were to be present at this meeting. *This agreement was not followed.*"

19. The AJ dismissed the case again by decision dated February 8, 2005, finding the issues had been previously settled by the March 24, 1999 settlement agreement. In her decision, the AJ stated that "if it is the Complainant's contention that the agency failed to abide by the March 24, 1999 settlement agreement, then the proper area of redress is an appeal to the OFO pursuant to 29 C.F.R. § 1614.504."

20. On March 5, 2005, Coulter appealed the dismissal to the Commission. In his letter of appeal, Coulter stated:

> "If I am to request an appeal as suggested by Judge Maiben, then I do so at this time. *If there is no reason for another appeal, then I would appreciate the order given by the OFO to be carried out.*
> \*\*\*\*
> If the March 24, 1999 [settlement agreement] is invalid for *non compliance, then all of my six cases should be reopened and decided on.*"

21. In a subsequent letter dated April 20, 2005, Coulter stated:

> "First let me say, that on Agency #1: 1G756005799 seems to have gotten twisted by the two judges. I believe that Agency #1 was questioning the right of the Postal Service to put me on the program that they did, so far the only thing that the judges have been concerned with is the fact of the mediation document, never addressing whether the Postal Service was correct in them placing me in the rehabilitation program. I had asked all pertinent questions as to their reasons and proof that I should have been place [sic] into that program, therefore I asked that *that be reviewed again after six years. My EEOC complaint was not about whether they followed the settlement agreement or not, it has always been and will always be by what right did they have to justify that action.*'

22. Seizing upon that language, the Agency submitted that the dismissal by the AJ was correct, since the March 24, 1999 settlement agreement settled the pending EEO matters, including 1G756005799.

23. By decision dated July 26, 2005, the Commission, OFO, dismissed Coulter's appeal, holding that "upon review of the entire record, we determine that complainant failed to present any matter that is properly the subject of appeal." *Coulter v. United States Postal Service*, EEOC Appeal No. 01A52995 (July 26, 2005).

24. Coulter timely moved for reconsideration on August 26, 2005. In his request for reconsideration, he stated "since the agreement that Mr. Mathis made *was not carried out, it should not be considered binding. A contract that is not mutually binding is not a contract*"

25. By decision dated May 17, 2006, the Commission, OFO, denied Coulter's request for reconsideration, holding that the request for reconsideration failed to satisfy the criteria set forth in 29 C.F.R. § 1614.405(b). Additionally, the opinion stated:

> "In his request for reconsideration, complainant raises the issue of the agency's alleged noncompliance with the settlement agreement. However, complainant did not raise this as an issue in his initial appeal to the Commission.*** Thus, we decline to address herein complainant's allegation of the agency's noncompliance with the settlement agreement. Furthermore, our prior decision properly dismissed complainant's appeal finding that complainant's complaint was settled as part of a March 24, 1999 settlement agreement."

26. At all times pertinent herein, Plaintiff Coulter represented himself *pro se* during the EEO process.

27. Plaintiff Coulter filed his original action in the U.S. District Court for the Northern District of Texas, Dallas Division, Civil Action No. 06-CV-01497, within 90 days of his receipt of the Commission's decision dated May 17, 2006.

### III.
### Claim for Breach of EEO Settlement Agreement

28. Plaintiff Coulter repeats and realleges Section II, ¶s 5-27 herein, as if set forth verbatim.

29. On February 10, 1999, Plaintiff Coulter requested informal precomplaint counseling, asserting that his First Line Supervisor, Roy Andy, and Second Line Supervisor, James Jones, refused to allow him to return to work following his hospitalization for his mental disability, Bi-Polar disorder. He sought damages of $350,000.00, and disciplinary action against his supervisors.

30. On March 24, 1999, the parties reached a settlement agreement settling six of Coulter's pending EEO complaints, including Case No. 1G-756-0057-99. The settlement agreement provided that Olin Mathis, MDO, would do whatever possible to have Coulter

reinstated as an employee at the USPS BMC facility, 2400 DFW Turnpike, Dallas, Texas.

31. On April 5, 1999, Joyce Shoop, Coulter's OWCP rehabilitation counselor, wrote Olin Mathis to advise that Coulter was able to return to work at the USPS BMC facility, particularly since his First Line Supervisor, Roy Andy, who had been the source of job-related stress and harassment to Plaintiff Coulter, was working at another facility.

32. On April 30, 1999, Mr. Mathis wrote Ms. Shoop to advise that he had made "every effort possible to find suitable work within Mr. James Coulter's limitations" but that Mr. Coulter would not be returned to work at this time.

33. On or about June 24, 1999, Plaintiff Coulter sought informal counseling on the Agency's refusal to return him to work despite the March 24, 1999 settlement agreement. He signed an agreement to extend the 30-day counseling process.

34. On July 12, 1999, Mr. Mathis wrote Jocelyn Price, EEO Counselor and Investigator, stating that while Plaintiff Coulter appeared to be physically able to work at BMC, he was unaware of the previous problems Coulter had experienced at BMC with Roy Andy, and that after talking with Mr. Deal, he agreed with him that it would not be feasible to bring Coulter back to work at BMC.

35. Plaintiff Coulter presented his claim that The United States, through the Agency, failed to honor its obligations under the March 24, 1999 settlement agreement, which was made a basis in his August 9, 1999 EEO complaint, and in the subsequent remand and appeals thereafter.

36. The United States, through the Agency, failed to honor its obligations under the March 24, 1999 settlement agreement by returning Plaintiff Coulter to work at the USPS

BMC facility. The United States, through the Agency, continued to breach the March 24, 1999 settlement agreement by failing to make any further efforts to return Coulter to work following his August 9, 1999 EEO Complaint, and in the subsequent remand and appeals thereafter.

37. Pursuant to 29 C.F.R. § 1614.504(a), Plaintiff Coulter seeks a *de novo* determination that The United States, through the Agency, breached the March 24, 1999 settlement agreement by failing to return Plaintiff Coulter to work at the USPS BMC facility, and by failing to make any further efforts to return Coulter to work following his August 9, 1999 EEO Complaint, and in the subsequent remand and appeals thereafter.

38. Plaintiff Coulter seeks recovery of $300,000.00 in compensatory damages, including lost wages and benefits from March, 1999 through December 31, 2006, for the breach of the March 24, 1999 settlement agreement.

39. Plaintiff Coulter seeks an award of prejudgment and post-judgment interest on his claim for damages at the maximum rate allowed by law.

40. Plaintiff Coulter seeks recovery of his reasonable attorneys' fees and expenses, including expert fees, as part of costs, pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, PREMISES CONSIDERED, Plaintiff James Coulter prays that upon final hearing hereof, Plaintiff Coulter have judgment against The United States for breach of the March 24, 1999 settlement agreement, that he recover his compensatory damages as sought herein, prejudgment and post-judgment interest on his damages at the maximum rate allowed by law, reasonable attorneys' fees and expenses, including expert fees as costs, incurred in the prosecution of this matter in the trial court and any and all

appeals therefrom, and such other and further relief to which Plaintiff Coulter may be justly entitled.

Respectfully Submitted,

By: _____
STEVEN E. CLARK
STATE BAR NO. 04294800

Clark Ashworth Milby RLLP
Elm Place
1401 Elm Street, Suite 3404
Dallas, Texas 75202
Tel.: (214) 220-1210
Fax: (214) 220-1218
Email: sclark@camfirm.com

ATTORNEYS FOR
PLAINTIFF JAMES
COULTER